IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ALAN JAMES BELL                                                    PLAINTIFF

      v.                              Civil No.  15-5003

DEPUTY J. MARTINEZ Benton County
Detention Center (BCDC); NURSE DARLA
WATSON (BCDC);  NURSE GAIL
HARTGRAVES (BCDC); NURSE MICHELLE WILLS
(BCDC); NURSE JANA HULET  (BCDC);
and NURSE AMBER GOFF (BCDC)                                        DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Alan James Bell, pursuant to 42 U.S.C.

1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the East Arkansas Regional Unit of the Arkansas

Department of Correction.  At the time of the events at issue in this case, the Plaintiff was

incarcerated in the Benton County Detention Center (BCDC).  Plaintiff contends his

constitutional rights were violated in the following ways: (1) he was denied adequate medical

care; (2) his prescription medications were distributed in an unsanitary manner; and (3) his safety

was put at risk when Deputy Martinez referred to him as a sex offender in front of other inmates,

resulting in Plaintiff being moved to administrative segregation.

Pending are a partial motion to dismiss (Doc. 49) filed on behalf of Nurse Amber Goff,

Nurse Gail Hartgraves, and Nurse Jana Hulet.[1]  They contend that the distribution of medication

---

[1] The Court was unable to serve Nurse Michelle Wills.

-1-

AO72A
(Rev. 8/82)

without wearing gloves does not constitute a constitutional violation. They also contend there is no basis for an official capacity claim against them.

The Nurse Defendants do not read the Complaint to be asserting any other claims against them. However, the Court believes a plausible denial of medical care claim has been stated as to the adequacy of the care Plaintiff received for a diabetic ulcer on his foot/leg.

Also pending is a motion for summary judgment (Doc. 51), filed on behalf of Nurse Darla Watson and Deputy Martinez. A hearing was held on November 22, 2016, to allow the Plaintiff to testify in response to these pending motions. At the conclusion of the hearing, the matter was taken under advisement pending issuance of this report and recommendation.

### I. Background

Plaintiff testified that he was booked into the BCDC on May 10, 2013. He was in pretrial status until June 25, 2014. He was released from the BCDC on February 27, 2015.

When he was booked in, Plaintiff reported being on the following prescription medications: (1) Lipitor; (2) Janumet; (3) an acid reducer; (4) Glipizide; (5) Cephalexin (brand name Keflex®); and (6) Lisinopril. Defendants' Exhibit (hereinafter Defts' Ex.) 8. Plaintiff testified he brought the medications with him, and beginning on May 11, 2013, started receiving the antibiotic on the prescribed basis. Defts' Exs. 9-11.

Prior to his arrest, Plaintiff had a diabetic ulcer on his right foot that was being treated on a weekly basis by Dr. Peck in Siloam Springs, Arkansas. The treatment consisted of debriding the wound, putting salve on it, and dressing it. Plaintiff was treated by Dr. Peck over a period of months. In fact, Plaintiff was seen on Thursday, May 9, 2013, and an appointment

-2-

was scheduled for the following Thursday morning.  He was arrested the following day and booked into the BCDC.

Plaintiff testified that the antibiotic was the only one of his prescription medications that was being used to treat his ulcer at the jail.  The medical staff obtained Dr. Peck's records but there was no indication of the strength of the Mupirocin salve.  Defts' Ex. 11.  Medical staff contacted both the Plaintiff's wife and Dr. Peck's office in an attempt to determine the strength of the ointment.  Id.

Plaintiff testified that beginning on May 14, 2013, he had problems with his leg being badly swollen.  On May16, 2013, Plaintiff submitted a medical request stating his diabetic sore on the right side of his foot needed to be looked at.  Defts' Ex. 12 at 1.  He indicated the sore was beginning to swell and bleed.  Id.

Plaintiff testified that on May 17, 2013, he was taken to the infirmary.  He indicated there were five nurses in the room.  He was told they were not going to do anything with the ulcer and sent him back to the barracks.  Plaintiff testified his foot kept getting worse and the pain increased to such an extent that he was unable to sleep.

On May 22, 2013, Plaintiff submitted another medial request.  Id. at 2.  He stated the sore was starting to swell and he had washed it multiple times a day.  Id.  On May 23, 2013, he was informed by Nurse Watson that he had an appointment to see Dr. Peck.  Defts' Ex. 12 at 2.  On May 24th, Plaintiff asked when the appointment was scheduled.  Id. at 3.  In response, Nurse Watson told Plaintiff for security reasons he could not be told when the appointment was.  Id.

On May 24, 2013, Plaintiff asked to be off his foot for two days because of swelling.  Defts' Ex. 12 at 4.  His request was approved by Nurse Smith but not until May 27, 2013.  Id.

-3-

On May 27, 2013, Plaintiff wrote:

I have been working on keeping my foot attached to my body and I come to this facility and you refuse to give proper medical care. i am diabetic & i don't heal as quickly as i should. i cant even get bed rest to elevate my foot. i have an appt w/ a real dr. but until then i am given band aids . . . really? bandaids? do you guys use actual licened professionals or do you use a home remedy book?

Defts' Ex. 12 at 5. This request was viewed by T. Vang on May 28th, but no response written. Id.

Plaintiff testified that During the time period between May 10, 2013, until May 30, 2013, he did not receive proper care for his foot and leg. He testified that his leg was swollen to three times the size it was supposed to be. He indicated that the nurses did not even clean the wound and did not call the jail doctor to have him look at the wound. Further, Plaintiff testified that for a one week period he was assigned a cell on the top tier of the pod and had to go up and down the stairs multiple times a day--for meals, medication call, to get the foot dressed, etc.

Plaintiff was seen by Dr. Peck on May 30, 2013. Defts' Ex. 13. According to the Plaintiff, Dr. Beck called Nurse Watson "chewing her out due to the severity of the wound." Dr. Peck debrided the wound, increased the antibiotics, and took a culture and sent it to be tested for infectious diseases. Dr. Peck indicated the foot might need to be amputated. Dr. Peck ordered: bed rest; no socks; application of Mupirocin 2% on the foot ulcers daily with dry sterile dressing; a referral to Dr. Stephen Harrigan for an infectious disease consultation; a prescription for Keflex (ciprofloxacin); and Plaintiff was to return in a week. Id.

According to the Plaintiff, it took three days for the Defendants to get the Mupirocin salve, but from then on they treated the wound. Plaintiff indicated he was on antibiotics for six months straight. Plaintiff testified Dr. Peck also felt that he should be off his feet and be allowed

-4-

to use a wheelchair to move around.  Defendants refused initially to allow Plaintiff to use a wheelchair but did move him to a hospital cell.  Plaintiff said he was instructed not to discuss his case with anyone and he agreed.

Plaintiff testified that after about a week he was put into a wheel chair.  In his opinion, after May 30th, the Defendants tried to follow Dr. Peck's orders.  Plaintiff testified he went to see Dr. Peck every week until September 14, 2013.  After that, Plaintiff was set up with a doctor in Rogers, Arkansas.  Plaintiff testified that after he was seen by Dr. Peck on May 30, 2014, the nurses tried to follow his orders.  Plaintiff testified that once Plaintiff transferred to the ADC, he was put in the infirmary and put on IV antibiotics for seven days.

From May 31, 2013, through June 5, 2013, Plaintiff received daily wound care by Nurse Hulet, Nurse Smith, and Nurse Hartgraves.  Defts' Ex. 14.  Plaintiff also received wound care on June 7, 2013.  Id.  Plaintiff testified that there was no policy at and that he was simply alleged that he did not get the proper medical.

Plaintiff's second claim concerns the way the nurses handed out medication.  Specifically, the nurses did not wear gloves during medication distribution.  Plaintiff testified there were times the pills tasted like soap or lotion.  Further, he testified that you had no idea what the nurses had been handling prior to medication distribution.  When asked if he was aware of any jail policy, custom, or practice that caused the violation of his constitutional rights, Plaintiff testified that he did not know what the jail policy was.

Plaintiff's final claim is against Deputy Martinez.  Plaintiff testified that Deputy Martinez put the Plaintiff's safety at risk on June 7, 2013, during the night pill call by saying Plaintiff was

-5-

a sex offender in front of other inmates. Plaintiff testified he was never attacked but was threatened. Plaintiff stated that one inmate went so far as to come into Plaintiff's cell.

Plaintiff talked to Sergeant Lira about what had occurred and on Monday the inmate who was a threat was moved out of the pod. Plaintiff told Sergeant Lira what Deputy Martinez had said but Plaintiff did not believe anything was ever done about it.

Plaintiff was moved to administrative segregation because his condition required the use of a wheel chair. Defts' Ex. 3 at 2 ¶ 6 & ¶ 7. Plaintiff was given an individual cell to protect him because of his status as a sex offender. Id. In administrative segregation, the cell doors are locked twenty-three hours a day. Id. at ¶ 6. Inmates are given one hour out a day for recreation and other personal needs. Id.

During the hearing, Plaintiff did not indicate he was pursuing his move to administrative segregation as a separate claim. He offered no testimony to dispute Defendants' evidence that the move was based in part on the need to protect him because he was a sex offender and in other part on his need to be in segregation so that he could use a wheelchair for mobility purposes and for treatment purposes.

## II.  The Motion to Dismiss (Doc. 49)

As noted above, Nurse Hulet, Nurse Hartgraves, and Nurse Goff have filed a partial motion to dismiss (Doc. 49). Specifically, they seek dismissal of the claim regarding their alleged failure to wear gloves when distributing medication and of the official capacity claims.

### (A).  Applicable Standard

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

AO72A
(Rev. 8/82)

8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)(quoting Ashcroft v. Iqbal,556 U.S. 662, 678 (2009)).

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" Braden, 588 F.3d at 594 (quoting Iqbal, 556 U.S. at 678). The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," or reasonable inference, that the "defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)(While pro se complaints are liberally construed, they must allege sufficient facts to support the claims).

### (B).  Failure to Wear Gloves

"The Eighth Amendment prohibits the infliction of cruel and unusual punishment." Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." Hartsfield v. Colburn, 491 F.3d 394, 396 (8th Cir.  2007).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component:  'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious

-7-

medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

Although Plaintiff has broadly alleged that the failure to wear gloves contaminated his medication, he makes no allegation that the "failure to use gloves creates an unsafe environment" or that these nurses "ignored a possible danger." The mere failure to wear gloves does not constitute a claim of constitutional dimension. See e.g., Todd v. Walters, 166 Fed. Appx. 590, 593 (3d Cir. 2006); see also Woody v. Comprehensive Nursing, Inc., No. 2:09-CV-0002, 2009 WL 196216, *3 (N.D. Ga. Jan. 27, 2009)(mere fact that medication was not put directly in inmate's hand from a bubble pack, placed in a disposable cup, or distributed while wearing gloves, does not state a claim when no actual harm is suffered); cf. Jackson v. Heyns, No. 1:13-cv-636, 2013 WL 6007503, *5 (W.D. Mich. Nov. 13, 2013)(mere fact gloves were not worn during food handling does not make the food unsanitary). This claim will be dismissed.

**(C). Official Capacity Claim**

A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997). "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." Moyle v. Anderson, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted); Jenkins v. County of Hennepin, 557 F.3d 628, 633 (8th Cir. 2009)(Plaintiff must point to "any officially accepted guiding principle or procedure that was constitutionally inadequate."

-8-

I agree that the Plaintiff has failed to assert a plausible official capacity claim.  He has not suggested the existence of any policy, practice, or custom that resulted in Plaintiff being denied adequate medical care.

### III.  Motion for Summary Judgment (Doc. 51)

Separate Defendants Lieutenant Martinez and Nurse Darla Watson have filed a motion for summary judgment (Doc. 51).  They argue that: (1) Lieutenant Martinez did not identify Plaintiff as a sex offender in front of other inmates; (2) the placement of Plaintiff in medical administrative segregation was for his safety; and (3) Plaintiff received timely and adequate medical treatment for his foot and leg.

### (A).  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or

suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### (B). The Statement by Lieutenant Martinez

In general, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); Martin, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim).

However, "[p]rison officials are bound by the Eighth Amendment to take 'reasonable measures to guarantee the safety of the inmates.'" Irving v. Dormire, 519 F.3d 441, 450 (8th Cir. 2008)(quoting Farmer v. Brennan, 511 U.S. 825, 833-34 (1994)). For this reason, it has been held that labeling an inmate a "snitch" can satisfy the Farmer standard and constitute deliberate indifference to the safety of that inmate. In Irving, the Eighth Circuit held that the Defendant "was on fair notice that to falsely label an inmate a snitch is to unreasonably subject that inmate to the threat of a substantial risk of serious harm at the hands of his fellow inmates. After all, who better knows the opprobrium and consequent effect thereof that attaches to the label snitch than those who work daily within the inmate population." Irving, 519 F.3d at 451.

-10-

Here, Plaintiff contends being labeled a "sex offender" by Lieutenant Martinez created a pervasive risk of harm from other inmates. To prevail, Plaintiff must prove: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834; and (2) "establish the prison officials were deliberately indifferent to inmate health or safety." Id.; see also Holden v. Hirner, 663 F.3d 336, 340-41 (8th Cir. 2011); Young v. Selk, 508 F.3d 868, 870-73 (8th Cir. 2007)(discussing potential for substantial risk where inmate told officials of cellmate's threats, requested to be removed from cell immediately, said it was an emergency, and was subsequently attacked).

In this case, Plaintiff has failed to establish that there are genuine issues of material fact with respect to his claim. Here, Plaintiff testified sex offenders were housed in the upper tier of the pod and non-sex offenders were on the bottom tier. There is no evidence suggesting that: the other inmates were unaware of the fact that Plaintiff was a sex offender; jail staffing was inadequate; an atmosphere of violence existed; Plaintiff or any other sexual offenders had requested protection from other inmates; that Plaintiff had voiced any concerns for his safety; or that there were incidents when sex offenders were being attacked by other non-sex offender inmates.

The evidence presented is insufficient to create a genuine issue of material fact as to whether Plaintiff was incarcerated under conditions posing a substantial risk of serious harm. Similarly, the evidence presented is insufficient to create a genuine issue of material fact as to whether Lieutenant Martinez knew of, and was, deliberately indifferent to an excessive risk of danger.

-11-

### (C).  Placement in Administrative Segregation

As noted above, Plaintiff testified at the hearing that he was only pursuing three claims. He did not dispute that the BCDC had valid reasons for separating sex offenders from the general population and/or that there was a need to segregate him due to his treatment and use of a wheelchair.  Bell v. Wolfish, 441 U.S. 520, 540 (1979)(government has legitimate operation concerns that may be necessary to maintain security and order and justify restrictions on inmate movement or housing).

### (D).  Denial of Medical Care

The relevant components necessary to establish an Eighth Amendment violation of the right to adequate medical care were set forth above in connection with the motion to dismiss. The standard, of course, has developed over time and takes into consideration that fact that prisoners "must rely on prison authorities to treat his medical needs; if the authorities fail to do so the prisoner will not receive any medical care." Brewer v. Blackwell, 836 F. Supp. 631, 638 (S.D. Iowa 1993)(citations omitted).

In this case, there is no dispute as to whether or not Plaintiff had a serious medical condition; his diabetic ulcer for which he was receiving weekly treatment prior to his incarceration clearly constitutes a serious medical need.  Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)(a medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would recognize the necessity of treatment).

The question then is whether Plaintiff has shown the existence of a genuine issue of fact as to whether Nurse Watson acted with deliberate indifference to his serious medical needs.  I

-12-

believe Plaintiff has met his burden.  According to Plaintiff, his condition was left basically untreated from his booking in on May 10th until he was seen by Dr. Peck on May 30th.  While he did receive his antibiotic, Plaintiff submitted several requests/grievances about his leg being swollen, his condition worsening, and he also testified that his pain became so bad that he could not sleep.  Plaintiff testified the nurses, Nurse Watson included, refused to treat him and did not even consult with the jail doctor and/or have him seen by the jail doctor.

### IV.  Conclusion

For the reasons stated, I recommend as follows:

(1) that the **Partial Motion to Dismiss (Doc. 40)** filed by Separate Defendants Nurse Hartgraves, Nurse Hulet and Nurse Goff be **GRANTED** and all claims relating to the failure to wear gloves during medication distribution and all official capacity claims be dismissed.  This leaves for later resolution the claim that the Nurses were deliberately indifferent to the Plaintiff's serious medical needs; and

(2) that the **Motion for Summary Judgment (Doc. 51)** filed by Separate Defendants Lieutenant Martinez and Nurse Watson be **GRANTED IN PART AND DENIED IN PART.** Specifically, all claims against Lieutenant Martinez should be dismissed.  This leaves for later resolution the issue of whether Nurse Watson was deliberately indifferent to the Plaintiff's serious medical needs.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties**

AO72A
(Rev. 8/82)

**are reminded that objections must be both timely and specific to trigger de novo review by**

**the district court.**

DATED this 3rd day of April 2017.


/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE

-14-