IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ALAN JAMES BELL**                                                           **PLAINTIFF**

**V.**                              **CASE NO. 5:15-CV-05003**

**DEPUTY J. MARTINEZ (BCDC);
NURSE DARLA WATSON (BCDC);
NURSE MICHELLE WILLS (BCDC);
NURSE JANA HULET (BCDC);
NURSE GAIL HARTGRAVES (BCDC); and
NURSE AMBER GOFF (BCDC)**                           **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Report and Recommendation ("R&R") (Doc. 57) of the

Honorable Erin L. Wiedemann, United States Magistrate Judge for the Western District of

Arkansas, regarding a Motion to Dismiss (Doc. 49) filed by Defendant Nurses Jana Hulet,

Gail Hartgraves, and Amber Goff; and a Motion for Summary Judgment (Doc. 51) filed by

Defendants Deputy J. Martinez and Nurse Darla Watson.[1]    Judge Wiedemann

recommends granting the Motion to Dismiss and granting in part and denying in part the

Motion for Summary Judgment. The effect of Judge Wiedemann's recommendation would

be: (1) the dismissal of all official-capacity claims; (2) the dismissal of the sole individual-

capacity claim against Deputy Martinez; (3) the dismissal of the individual-capacity claim

against Nurses Hulet, Hartgraves, and Goff for failing to wear gloves while dispensing

medication; (4) the preservation of the sole individual-capacity claim against Nurse Watson

---

[1]  Defendant Nurse Michelle Wills was never served in this action, despite repeated
attempts by the United States Marshals Service. *See* Show Cause Order (Doc. 44).
Plaintiff was also unable to provide the Court with a valid address for Nurse Wills. *See*
Response to Show Cause Order (Doc. 45).  Accordingly, Nurse Wills will be dismissed
without prejudice for failure of service, pursuant to Federal Rule of Civil Procedure 4(m).

for failing to provide adequate medical care for Plaintiff's diabetic foot ulcer; and (5) the preservation of a newly asserted individual-capacity claim against Nurses Hulet, Hartgraves, and Goff for failing to provide adequate medical care for Plaintiff's diabetic foot ulcer.

It appears that during an evidentiary hearing conducted before Judge Wiedemann on November 22, 2016, Plaintiff Alan James Bell testified that he had intended to bring his medical-care claim concerning the treatment of his foot ulcer against *all* the Defendants who are nurses (hereinafter, "Nurse Defendants"). Prior to this point in the case, this claim had only been stated against Nurse Watson. Despite this fact, Judge Wiedemann recommended that the claim be expanded to include all the Nurse Defendants, and that they all stand trial for this claim. In response, the Nurse Defendants collectively filed a Partial Objection to the R&R (Doc. 58), arguing, first, that Nurses Hulet, Hartgraves, and Goff should not be made to answer to a claim that had never before been asserted against them; and, second, that Nurse Watson was entitled to summary judgment in her favor on this claim.

On June 2, 2017, Mr. Bell filed an Objection to the R&R (Doc. 60). In that Objection, he reiterated his claim that "all 5 nurses" refused to provide him medical care for his foot, in violation of his rights, and refused "to do anything with the swelling of [his] right leg and refus[ed] to treat the Dibeitc [sic] sore on [his] right foot." *Id.* at 1. Mr. Bell also objected to Judge Wiedemann's recommendation to dismiss the individual-capacity claim against Deputy Martinez. In light of the objections filed by the parties, the Court reviewed the entire record of the case *de novo*, as required by 28 U.S.C. § 636, including the audio recording of the evidentiary hearing. For the reasons discussed herein, Defendants'

2

Objections will be sustained in part and overruled in part, and Plaintiff's objections will be overruled. The Court will **ADOPT IN PART AND DECLINE TO ADOPT IN PART** the R&R (Doc. 57).

## I. BACKGROUND

In light of the R&R's thorough recitation of the background facts in this case, a brief summary of those facts is all that is needed here to give context to the Court's discussion below. The record reflects that Mr. Bell filed this action *pro se,* concerning events that took place while he was in the custody of the Benton County Detention Center ("BCDC") from May 10, 2013, to February 27, 2015. He alleges in his Complaint that he was deprived of certain constitutional rights during his incarceration, in violation of 42 U.S.C. § 1983. He sues Deputy Martinez, in both his official and individual capacities, for stating aloud, in front of other inmates, that Mr. Bell was a sex offender. That statement, according to Mr. Bell, "put [him] in a bad place with the other Inmates and also cause[d] [him] to be Lock[ed] down 23 and 1 Hours a day because of it." (Doc. 1, p. 4). He does not contend that he was ever physically attacked by any inmate.

Mr. Bell also sues Nurses Hulet, Hartgraves, and Goff, in both their official and individual capacities, for being deliberately indifferent to his serious medical needs by dispensing medication to him without gloves. He does not contend he ever became sick from this practice or otherwise suffered any ill effects other than concern that he might become sick. Also, the Complaint clearly and plainly asserts only this claim, and no other, against these three Defendants.

3

Finally, Mr. Bell sues Nurse Watson, whom he contends is the head nurse in charge of the BCDC nursing staff, in both her official and individual capacities, for failing to attend to and properly treat a diabetic ulcer on the bottom of his foot. He contends that her refusal to treat his wound showed deliberate indifference to his serious medical needs. It is undisputed that he had been receiving weekly wound care for his foot—including cleaning, debriding, and dressing the wound with antibiotic salve—immediately prior to his incarceration at the BCDC. He maintains that shortly after he entered the custody of the BCDC, his leg and foot swelled, and the wound started to bleed. He then sought medical care from Nurse Watson on May 17, 2013, and she refused to provide any treatment at all, instead scheduling an appointment for him to see his outside doctor, which did not take place until May 30, 2013. He never saw the jail's doctor during that time.

## II. LEGAL STANDARD

Nurses Hulet, Hartgraves, and Goff jointly filed a Motion to Dismiss the only claim that was asserted against them: that they violated Mr. Bell's Eighth Amendment right to be free from cruel and unusual punishment by dispensing his medication without wearing gloves. In evaluating a motion to dismiss, the Court must accept all of a complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nurse Watson and Deputy Martinez jointly filed a Motion for Summary Judgment. In the Motion, Nurse Watson contends that she is entitled to judgment in her favor as to

4

Mr. Bell's claim that she denied him adequate medical care for his foot and was deliberately indifferent to his serious medical needs. Deputy Martinez argues in the same Motion that merely stating aloud that an inmate is a sex offender, even if that comment is overheard by other inmates, cannot state a constitutional rights violation as a matter of law. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Such a motion must be analyzed by considering the facts in the light most favorable to the opposing party, and giving that party the benefit of any inferences that logically can be drawn from the facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). Once the moving party has met its burden of proving the absence of a genuine dispute of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)).

## III. DISCUSSION

### A. Official-Capacity Claims

Mr. Bell submitted his Complaint in this case by filling out a document entitled "Form to be Used by Prisoners in Filing a Complaint under the Civil Rights Act, 42 U.S.C. § 1983." This form was developed by the courts to assist prisoners representing themselves *pro se*. The form contains blanks for the plaintiff to list the name of each defendant and the cause of action stated against each. Below each defendant's name, the form also contains an area where the plaintiff may indicate, using check marks, whether the defendant is being

5

sued in his or her official capacity, individual capacity, or both. In Mr. Bell's Complaint, he clearly indicates that he sues all Defendants in "both" capacities.

When a plaintiff sues an official in his or her official capacity, that claim is, for all practical purposes, asserted against that official's employer. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In order to state a valid claim under Section 1983 against a public official acting in his or her official capacity, the plaintiff must allege that a policy or custom implemented by the official's employer is responsible for the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Here, Deputy Martinez's employer is Benton County, Arkansas, and the Nurse Defendants' employer is either Benton County or an unnamed entity that contracts with Benton County to provide medical care to inmates.

Regardless of the true identity of the Nurse Defendants' employer, the Court finds that the Complaint fails to state any facts that would constitute official-capacity claims. Mr. Bell did not set forth any facts during the evidentiary hearing that would indicate that his constitutional rights were infringed upon as a result of a policy or custom of Benton County, or of any other employing entity. In the absence of any factual allegations to support official-capacity claims, they will be dismissed—*with* prejudice as to Nurse Watson and Deputy Martinez, since they moved for dismissal under Rule 56, and *without* prejudice as to Nurses Hulet, Hartgraves, and Goff, since they moved for dismissal under Rule 12(b). The R&R is therefore **ADOPTED** as to the official-capacity claims.

### B. Individual-Capacity Claim against Deputy Martinez

The only remaining claim against Deputy Martinez is that he violated Mr. Bell's Eighth Amendment right to be free from cruel and unusual punishment by making a comment to the night nurse on duty, during the nightly distribution of medication, that Mr. Bell was a sex offender. This comment, according to Mr. Bell, was overheard by other inmates, and subsequently jeopardized Mr. Bell's safety at the BCDC by subjecting him to increased threats of violence. Mr. Bell contends that as a result of these threats, prison officials did two things: (1) moved the individuals who threatened him into other areas of the jail, and (2) moved Mr. Bell to different locations within the jail to protect him from harm, including a cell in the medical pod that was administratively segregated from other non-sex-offender inmates, where he stayed in lock-down for 23 hours a day.[2]

As Judge Wiedemann pointed out in the R&R, if a prison guard falsely labels an inmate a "snitch" in front of other inmates, this can, in some cases, support a finding that the guard behaved in a manner that was deliberately indifferent to the inmate's safety, since "an inmate who is considered to be a snitch is in danger of being assaulted or killed by other inmates . . . ." *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008). But here, the facts viewed in the light most favorable to Mr. Bell indicate that Deputy Martinez did not call him a snitch, but instead told a nurse that he was a sex offender. Specifically, Mr. Bell

---

[2]  Mr. Bell testified during the evidentiary hearing that he was not pursuing a separate Eighth Amendment claim based on being housed in administrative segregation, on 23-hour-a-day lock-down. He also did not dispute that the BCDC may have had valid reasons for separating sex offenders in housing units for their safety and for separating from the population those who were receiving medical treatment and/or using medical devices, such as wheelchairs.

alleges that "Deputy J. Martinez Informed the nurse on duty [for] the night pill call on June 7, 2013 that I was a sex offender in front of 3 Inmates . . . ." (Doc. 60, p. 2).

The Court agrees with the Magistrate Judge that the law does not go so far as to find that labeling a defendant a sex offender, even in the context of a prison or jail environment, will violate his Eighth Amendment right to be free from cruel and unusual punishment. Mr. Bell was never physically attacked or injured by another inmate. The greatest harm he suffered, allegedly as a result of other inmates overhearing Deputy Martinez's comment, was repeated threats to his safety and security. In *Farmer v. Brennan*, 511 U.S. 825, 833 (8th Cir. 1994), the Supreme Court explained that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners" (internal quotation marks and citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. In this case, Mr. Bell did not suffer *any* physical injury at all, likely because jail personnel in every instance acted to move either Mr. Bell or the inmate delivering the threats to another cell or to another location in the jail entirely; and in the end, Mr. Bell was placed in administrative segregation in the medical unit for his protection, which involved staying in a locked cell 23 hours a day.

To assert a claim arising from a jail official's breach of his duty to protect an inmate, it must be established that the jail official created conditions, either through his words or actions, that posed a substantial risk of serious harm to the inmate, and that the jail official acted recklessly, with deliberate indifference to the inmate's safety, "despite [the official's] knowledge of a substantial risk of serious harm." *Id.* at 840-42. There is no evidence that Deputy Martinez failed to protect Mr. Bell from danger. There is no evidence that Deputy

8

Martinez knew of and disregarded a risk to Mr. Bell that might be caused by stating to an on-duty nurse Mr. Bell's classification status as sex offender—which was material to where he was housed within the medical pod. Although it is acknowledged that sex offenders face dangers in the general prison population from other inmates, there does not appear to be any Eighth Circuit precedent stating that a prison guard's revelation of an inmate's status as a sex offender, without more, constitutes a failure to protect and violates the inmate's Eighth Amendment right.

Even if Deputy Martinez's comment, in and of itself, placed Mr. Bell in danger, and even if the threat of injury alone were sufficient to state an Eighth Amendment violation, Deputy Martinez could only be liable under Section 1983 if his comment exhibited a "'deliberate or callous indifference' to an inmate's safety," *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (quoting *Davidson v. Cannon*, 474 U.S. 344, 347(1986)), or if he acted with "reckless disregard" for Mr. Bell's safety, *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991). The Court has thoroughly reviewed Mr. Bell's testimony in opposition to summary judgment, and finds that he has stated no facts that would support an inference that Deputy Martinez acted with deliberate or callous indifference, or a reckless disregard for his safety.

Furthermore, the Court believes that it was not clearly established at the time Deputy Martinez made the comment in question that it could possibly implicate Mr. Bell's Eighth Amendment right. The Court conducted a review of the case law in this Circuit, with the goal of locating similar facts and arguments to those made here. It appears there are no published opinions in this Circuit concerning whether a prison guard's act of revealing a prisoner's sex offender status to other inmates would potentially violate the prisoner's

9

Eighth Amendment right.   Therefore, there are no prior cases that "would have put a reasonable officer on notice" that the comments made in these circumstances would violate Mr. Bell's right not to be subjected to cruel and unusual punishment. *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005).   With that said, the Court recognizes that "in an obvious case," a right may be clearly established, "even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).   These facts, however, do not amount to an "obvious case."

Accordingly, the Court concludes that if Deputy Martinez were to face liability under Section 1983 for the comment he made, the doctrine of qualified immunity would shield him.   *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015) ("In a series of recent decisions, the Supreme Court has emphasized that for a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question 'beyond debate.'").   For these reasons, the R&R will be **ADOPTED** as to the dismissal of the claim against Deputy Martinez.

### C. Individual-Capacity Claims against Nurses Hulet, Hartgraves, and Goff

Mr. Bell failed to object to the portion of the R&R in which the Magistrate Judge recommended that the Court dismiss the claim concerning the nurses dispensing

medication without gloves. The Court agrees that this claim fails to implicate a constitutional right and should be dismissed without prejudice under Rule 12(b)(6). Accordingly, the R&R will be **ADOPTED** as to this recommendation.

With respect to the Magistrate Judge's recommendation that a new claim be asserted against Nurses Hulet, Hartgraves, and Goff concerning their failure to adequately care for Mr. Bell's foot, the Court **DECLINES TO ADOPT** this portion of the R&R. The first time these nurses were placed on notice that this claim was asserted against them was during the summary judgment hearing. During direct questioning by the Magistrate Judge about the treatment of his foot at the BCDC, Mr. Bell testified that he believed Nurses Hulet and Hartgrave should also be held responsible, along with Nurse Watson, for failing to properly care for his foot.[3] The Complaint fails to state any such claim against these nurses, and the time to amend the Complaint has long since expired. *See* Doc. 46. Therefore, Nurses Hulet, Hartgraves, and Goff are dismissed without prejudice from this lawsuit, as no other claims are pending against them.

### D. Individual-Capacity Claim against Nurse Watson

As for the claim against Nurse Watson, the Court **ADOPTS** the Magistrate Judge's recommendation that this cause of action be preserved for trial. In order to state an actionable claim for failure to provide adequate medical care under Section 1983, a plaintiff must allege facts that, when accepted as true, could allow a fact-finder to conclude that the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). In order to succeed on such a claim,

---

[3] He specifically excluded Nurse Goff from this claim during his testimony.

11

the plaintiff must satisfy both an objective and a subjective component, namely: (1) that his medical need was objectively serious, and (2) that the defendant was subjectively aware of this need and did not respond reasonably. *Farmer*, 511 U.S. at 834. An "objectively serious" medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991).

In addition to the objective and subjective components of the claim, deliberate indifference also requires a showing that the chosen course of treatment is "grossly incompetent or . . . deviates from professional standards." *Brewer v. Blackwell*, 836 F. Supp. 631, 643 (S.D. Iowa 1993) (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "Mere disagreement" with treatment decisions does not constitute deliberate indifference. *Popoalii*, 512 F.3d at 499. And a showing of mere negligence, or even gross negligence that could otherwise constitute a claim for medical malpractice, will not be enough to establish a claim for deliberate indifference. *Id.* Instead, the level of culpability "is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

In reviewing the claim against Nurse Watson on summary judgment, she does not appear to dispute that Mr. Bell's diabetic ulcer was an objectively serious medical need. She also agrees that she was involved in Mr. Bell's treatment either directly, or indirectly as a supervisor, between May 17, 2013—when he was first seen at the jail infirmary for his foot ulcer—through May 30, 2013—when he was seen by his treating physician, Dr. Peck of Siloam Springs, for the first time after being booked into the BCDC. Mr. Bell testified

that prior to his incarceration, he had been seeing Dr. Peck on a weekly basis to clean the wound, cut away dead skin, put salve on it, and dress it. Mr. Bell further testified that after he was booked into the BDCD on May 10, 2013, his leg began to swell, and his foot ulcer swelled and bled, prompting him to submit a medical request to the infirmary. He stated that when Nurse Watson inspected his foot in the infirmary, she told him that nothing would be done about the ulcer, and he was sent back to his room.

Nurse Watson argues that she did respond to Mr. Bell's request for treatment by doing the following: (1) contacting Dr. Peck's office to schedule an appointment for Mr. Bell, (2) attempting to call Mr. Bell's wife to ask her to bring salve and other medications for Mr. Bell,[4] and (3) sending a fax to Dr. Peck to ask him to clarify the strength of the antibiotic salve so that it could be ordered. She does not dispute Mr. Bell's contention that neither she nor any other nurse under her supervision cleaned, dressed, and/or debrided his wound during the two-week period in question, nor did any nurse order him to stay off his foot to avoid irritating the ulcer. There is a genuine, material dispute of fact as to whether failing to treat the wound at all over a two-week period, and/or failing to consult with the jail doctor regarding the wound over that period, was unreasonable, reckless, and constituted deliberate indifference to Mr. Bell's serious medical need.

There is also a dispute of fact as to whether this period of delay and lack of treatment resulted in an objectively serious detrimental effect on Mr. Bell's heath. Although Nurse Watson argues in her Objections that Mr. Bell "has shown no detrimental effect caused by a delay in treatment," (Doc. 58, p. 5), Mr. Bell testified that over this two-week

---

[4] She did not make contact with Mr. Bell's wife because the number she dialed was a "non-working" phone number. See Doc. 52-11, p. 1.

period, the condition of his ulcer deteriorated, and the pain was so severe that he could not sleep. He claims that by the time he was seen by Dr. Peck, his leg had swelled to three times its normal size, and Dr. Peck was concerned that the foot would need to be amputated. Furthermore, Dr. Peck's notes from his visit with Mr. Bell on May 30, 2013 reflect a diagnosis of foot ulcers and cellulitis—which is a bacterial skin infection. (Doc. 52-13). It follows that there exists a genuine, material dispute of fact as to whether this infection developed over that two-week period, or was already present and remained stable, or worsened. In addition, Dr. Peck's notes state that he had decided to refer Mr. Bell to Stephen Hernigan, M.D., "for infectious disease consultation." *Id.* Again, the fact that this infectious-disease consultation was ordered on May 30 supports Mr. Bell's claim that the condition of his ulcer had deteriorated during the time he was incarcerated at the BCDC under Nurse Watson's care—or lack thereof.

When a plaintiff such as Mr. Bell alleges a delay in medical treatment, "the objective seriousness of the deprivation should be measured by reference to the *effect* of delay on treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotation marks and citation omitted) (emphasis in original). Here, Mr. Bell has set forth evidence in the form of his oral testimony that the lack of care exhibited by Nurse Watson resulted in a worsening of his condition and a failure to heal that required him to ingest antibiotics continuously for the next six months, and in addition to that, undergo a seven-day period of intravenous antibiotics during his time in the Arkansas Department of Correction. It therefore remains a question of fact for the jury as to what, if any, serious detrimental effect Nurse Watson's treatment decisions had on Mr. Bell's ability to completely heal from the ulcer on his foot. It also remains a question of fact for the jury whether Nurse Watson's

14

treatment choices were correct and reasonable, or at worst negligent—which would result in no liability—or else exhibited a degree of recklessness that would support a finding of deliberate indifference.

## IV. CONCLUSION

In view of the analysis above, the Court hereby **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the R&R (Doc. 57). **IT IS THEREFORE ORDERED** that the Motion to Dismiss (Doc. 49) filed by Defendants Hulet, Hartgraves, and Goff is **GRANTED**, and all claims against them are **DISMISSED WITHOUT PREJUDICE**, pursuant to Rule 12(b)(6).

**IT IS FURTHER ORDERED** that all claims against Defendant Michelle Wills are **DISMISSED WITHOUT PREJUDICE** for failure of service, pursuant to Rule 4(m).

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment (Doc. 51) filed by Defendants Watson and Martinez is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** with respect to: (1) all claims against Defendant Martinez, and (2) the official-capacity claim against Defendant Watson. These claims are **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** with respect to the individual-capacity claim against Defendant Watson that concerns her alleged deliberate indifference to Plaintiff's serious medical needs. This claim will be the only one that is preserved for trial.

The Clerk of Court is directed to dismiss all Defendants from this case except for Nurse Watson. The parties are advised that a scheduling order will issue shortly, setting a trial date and pretrial deadlines.

**IT IS SO ORDERED** on this ___ day of July, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

16